**United States District Court**
For the Northern District of California

**\*E-Filed 3/31/11\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CARPENTERS PENSION TRUST FUND
FOR NORTHERN CALIFORNIA

    Appellant,

v.

MICHAEL G. MOXLEY aka MGM'S
CABINET INSTALLATION SERVICE,

    Appellee.
_____/

No. C 10-0756 RS

**ORDER AFFIRMING JUDGMENT OF
BANKRUPTCY COURT**

## I.  INTRODUCTION

Appellant Carpenters Pension Trust Fund for Northern California (the "Fund") filed a
complaint in the chapter 7 bankruptcy proceeding of appellee Michael Moxley.  The Fund contends
that an alleged debt based on Moxley's withdrawal from the pension fund is nondischargeable under
the Bankruptcy Code.  After the bankruptcy court granted summary judgment in favor of Moxley,
the Fund filed an appeal in this Court.  For the reasons stated below, the decision of the bankruptcy
court is affirmed.

## II.  BACKGROUND

In 1999 Moxley, as the sole owner and operator of MGM's Cabinet Installation, entered into
a collective bargaining agreement with the 46 Northern California Counties Carpenters Conference

**United States District Court**
For the Northern District of California

Board.  Under the agreement, Moxley was required to make contribution to a multiemployer pension fund.  The parties' agreement expired in June 2004 and Moxley declined to renew it.  For purposes of this action, Moxley does not dispute that he effected a "withdrawal" from the pension plan by continuing to perform work in the same location "of the type for which contributions were previously required."  29 U.S.C. § 1383(b)(2).  Under the Employee Retirement Income Security Act (ERISA), withdrawal from a multiemployer plan triggers an employer's obligation to compensate the plan for its share of the unfunded vested liability.  *See* 29 U.S.C. § 1381.

In March 2005, the Fund notified Moxley that the amount of his withdrawal liability was $172,045 and included a schedule of payments pursuant to 29 U.S.C. 1399(b)(1).  In February 2007, the Fund filed suit in district court seeking to recover the amount allegedly owed.  On November 16, 2008, Moxley filed a chapter 7 bankruptcy petition with the Bankruptcy Court for the Northern District of California.  The Fund initiated an adversary proceeding seeking an order from the bankruptcy court that the withdrawal liability constitutes a nondischargeable debt.  The Fund moved for summary judgment and on November 18, 2009, the court entered its order denying the motion.  Based on its conclusion that no issues of material fact remained to be decided, it sua sponte granted summary judgment in favor of Moxley.  The Fund sought reconsideration, and after reviewing the parties' arguments, the bankruptcy court denied the motion for reconsideration.  Subsequently, the Fund filed an appeal of the bankruptcy court's judgment in this Court.

### III.  LEGAL STANDARD

When considering an appeal from the bankruptcy court, a district court applies the same standard of review that a circuit court would use in reviewing a decision of a district court.  *See Ford v. Baroff* (*In re Baroff*), 105 F.3d 439, 441 (9th Cir. 1997).  A grant of summary judgment is reviewed de novo.  *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003).  Under the Federal Rules of Civil Procedure, a court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party must identify factual disputes that "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Irrelevant or unnecessary factual disputes do not raise any genuine issue for trial.  *Id.*  To preclude entry of summary judgment, the nonmoving party must present sufficient evidence such that a jury could return a verdict in his or her favor.  *Id.*

## IV.  DISCUSSION

A.      Discharge of Debt Based on Withdrawal Liability

The Fund contends that the alleged withdrawal liability constitutes a nondischargeable debt under section 523(a)(4) of the Bankruptcy Code.  Under that provision, a bankruptcy discharge does not relieve an individual of debt for defalcation while acting in a fiduciary capacity.  11 U.S.C. § 523(a)(4).  Defalcation involves the misappropriation or failure to account properly for "trust funds or money held in any fiduciary capacity."  *Blyler v. Hemmeter* (*In re Hemmeter*), 242 F.3d 1186, 1190 (9th Cir. 2001) (internal quotation marks and citations omitted).  Under the Fund's theory, Moxley serves in a fiduciary capacity with respect to the unpaid withdrawal liability and he has committed defalcation by failing to produce the money owed.

Pursuant to ERISA, a fiduciary of a plan includes a person who "exercises any discretionary authority or discretionary control respecting management or disposition of its assets."  29 U.S.C. § 1002(21)(A)(i).  "Plan assets" within the meaning of ERISA do not include future contributions to a pension fund.  *See Collins v. Pension & Ins. Comm. of the S. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998) (citations omitted).  Thus, as explained by the Ninth Circuit: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation; this is true even where the employer is also a fiduciary of the plan."  *Cline v. Industrial Maintenance Eng'g & Contr. Co.*, 200 F.3d 1223 (9th Cir. 2000) (citations omitted).

The Fund contends that the Court in *Cline* merely stated a general rule that does not apply where the parties expressly agree that future contributions constitute plan assets.  *See*, *e.g.*, *Trs. of the S. Cal. Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

1156 (C.D. Cal. 2006).  In *Temecula Mechanical*, the trust agreement at issue stated that assets of the fund consisted of "sums of money that have been or will be paid or which are due and owing." *Id.* at 1165.  A second agreement explained that trust assets included "such sums of money as have been or shall be paid" by employers to the fund.  *Id.* at 1165-66.  The court determined that it should give effect to the terms of the agreements negotiated by the parties, which defined unpaid contributions as fund assets.  *Id.* at 1167.  It therefore denied the defendants' motion to dismiss a breach of fiduciary duty claim based on delinquent contributions.  *Id.* at 1159.

In *Board of Trustees of the Laborers Health and Welfare Trust Fund for Northern California v. Atoll Topui Island, Inc.*, the district court adopted the magistrate judge's report and recommendation entering default judgment against the defendant.  No. C 06-3059 SBA, 2007 U.S. Dist. LEXIS 4307 (N.D. Cal. Jan. 22, 2007).  In so doing, the court concluded that "*Cline* does not preclude the parties from making employer contributions 'plan assets' <u>as a matter of contract</u>."  No. C 06-3059 SB, Dkt. 27 at 6 (emphasis in original).  Moreover, the court determined that language in the parties' agreement stating that the trust assets included "contributions required . . . to be made" established that unpaid employer contributions were plan assets at the moment they became due.  *Id.* at 7.  Consequently, the court held that the defendant breached his fiduciary duties to the plan beneficiaries by failing to pay contributions that he owed.  *Id.* at 7-8.

In this case, the Fund claims that the language of its agreement with Moxley defines the pension fund assets as consisting of all contributions "to be made" to the fund.[1]  Therefore, it argues that this Court should reach a similar result as the courts in *Temecula Mechanical* and *Atoll Topui* by concluding that Moxley's unpaid withdrawal liability represents a plan asset.  Even if the reasoning in those cases were adopted, the present dispute involves distinct issues.  Here, Moxley's withdrawal liability is at issue and he disputes that the term "contributions" in the parties' trust

---

[1]      Article II, Section 1 of the Trust Fund Agreement states: "The Carpenters Pension Trust Fund for Northern California shall consist of all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the Pension Plan, and all interest, income and other returns of any kind, and any other money or property received or held by reason of or pursuant to this Trust."  Excerpts of Bankruptcy Record (ER) 142.

United States District Court
For the Northern District of California

1   agreement encompasses this statutory obligation.  More significantly, neither prior case considered

2   an employer's fiduciary duty within the context of a bankruptcy discharge.

3        In this instance, whether Moxley's withdrawal liability constitutes a plan asset need not be

4   resolved.  Even if it were, the Fund must demonstrate, not just that Moxley acted as a fiduciary

5   according to the requirements of ERISA, but that he was a fiduciary within the specific meaning of

6   Bankruptcy Code section 523(a)(4).  Under that provision, debt alleged to be nondischargeable

7   "must arise from a breach of trust obligations imposed by law, separate and distinct from any breach

8   of contract."  *In re Baird*, 114 B.R. 198, 202 (9th Cir. BAP 1990).  Fiduciary status may be imposed

9   on a debtor by state or federal statute if the law: "(1) defines the trust res; (2) identifies the

10  fiduciary's fund management duties; and (3) imposes obligations on the fiduciary prior to the

11  alleged wrongdoing."  *In re Hemmeter*, 242 F.3d at 1190.

12       In this case, there are no allegations that Moxley was a named fiduciary of the plan or that he

13  possessed any management or administrative duties with regard to the pension fund.  Instead, the

14  Fund maintains that Moxley is acting as a fiduciary because he exercises discretionary authority

15  over the unpaid withdrawal liability.  In *Atoll Topui*, on which the Fund relies, the court concluded

16  that "by failing to pay contributions when due, Mr. Topui exercised authority and/or control over

17  plan assets and thus is deemed a 'fiduciary.'"  No. C 06-3059 SBA, Dkt. 27 at 7.  While that may

18  well be sufficient in the non-bankruptcy context, to conclude that a debt is nondischargeable the

19  fiduciary duty must exist "before the act of wrongdoing and not as a result of the act of

20  wrongdoing."  *In re Hemmeter*, 242 F.3d at 1190.  While the Fund urges the same outcome as in

21  *Atoll Topui*, its sole basis for charging Moxley with fiduciary duties over trust assets is that he has

22  failed to pay a debt owed to the Fund.  In other words, the Fund does not identify any fiduciary

23  obligations existing prior to and independent of the withdrawal liability.  Accordingly, Moxley is

24  not a fiduciary of the Fund within the meaning of 11 U.S.C. section 523(a)(4) and thus has not

25  committed any defalcation of its assets.

26  B.    <u>Waiver</u>

27       According to the Fund, Moxley waived all defenses with respect to his withdrawal liability

28  by failing to request arbitration properly during the time period imposed by statute.  Pursuant to the

1  Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA") amending ERISA, "any

2  dispute" between an employer and a multiemployer plan sponsor related to the determination of

3  withdrawal liability must be resolved through arbitration.  *See* 29 U.S.C. § 1401(a)(1).  If arbitration

4  is not initiated then "the amounts demanded by the plan sponsor . . . shall be due and owing on the

5  schedule set forth by the plan sponsor."  29 U.S.C. § 1401(b)(1); *see also Board of Trustees v.*

6  *Ceazan*, 559 F. Supp. 1210, 1218 (N.D. Cal. 1983).  Thus, as stated in its motion for summary

7  judgment in the bankruptcy proceeding, the Fund believes that "Moxley has waived any argument

8  contesting the existence or amount of withdrawal liability."  ER 399.

9      In this appeal, the Fund appears to be arguing something further, *i.e.*, that such failure to

10  arbitrate the amount of withdrawal liability extends to bar Moxley from seeking discharge of the

11  debt in bankruptcy.  The exceptions to discharge are expressly governed by 11 U.S.C. section 534.

12  No support exists for the Fund's position that the MPPAA requirement to arbitrate is intended to

13  override the provisions of the Bankruptcy Code.  Therefore, Moxley has not waived his right to seek

14  discharge in bankruptcy of debt based on ERISA withdrawal liability.

15  C.    Sua Sponte Grant of Summary Judgment

16      Finally, the Fund contends that the bankruptcy court erred by sua sponte entering summary

17  judgment in favor of Moxley.  A court may grant summary judgment sua sponte to the non-moving

18  party where "at the hearing, it is made to appear from all the records, files, affidavits and documents

19  presented that there is no genuine dispute respecting a material fact essential to the proof of

20  movant's case and that the case cannot be proved if a trial should be held."  *Cool Fuel, Inc. v.*

21  *Connett*, 685 F.2d 309, 311 (9th Cir. 1982).  In this instance, the Fund argues that it had no notice

22  that the bankruptcy court was considering summary judgment in favor of Moxley.  It therefore

23  claims it was denied an opportunity to present evidence on whether Moxley's business received

24  income after the withdrawal liability was assessed that allegedly should have been paid to the Fund.

25  According to the Fund, this question represents a disputed issue of material fact.  In a related

26  argument, the Fund also alleges that the bankruptcy court erred by apparently considering Moxley's

27  evidence of his business income, without ruling on the Fund's objections to it.

28

United States District Court
For the Northern District of California

1       The bankruptcy court concluded that Moxley did not commit any defalcation as "he merely

2  failed to use his personal assets, to the extent he had any, and which he obviously did not hold in

3  trust for the Fund, to pay his debt to the Fund."  ER 510.  Thus, in considering the question of

4  whether Moxley's debt was dischargeable, the bankruptcy court considered the extent of Moxley's

5  income as irrelevant.  Instead, the bankruptcy court based its grant of summary judgment on a

6  determination that Moxley was not a fiduciary of the Fund within the meaning of section 534(a)(4).

7  As this Court agrees with that conclusion, the existence or amount of any income from Moxley's

8  business is simply not a material dispute and no triable issue remains with respect to the Fund's

9  claim that Moxley's debt is nondischargeable.  Accordingly, the Fund is not entitled to a reversal of

10 the bankruptcy court's decision based on its sua sponte grant of summary judgment in favor of

11 Moxley.

12                                V. CONCLUSION

13      The denial of the Fund's motion for summary judgment and the grant of summary judgment

14 in favor of Moxley by the bankruptcy court is affirmed.

15

16      IT IS SO ORDERED.

17

18 Dated:  3/30/11                    _____

19                                    RICHARD SEEBORG
                                      UNITED STATES DISTRICT JUDGE
20

21

22

23

24

25

26

27

28